[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 07-10320 & 07-11222

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 3, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00350-CV-4-SPM-WCS
D.C. Docket No. 06-00350-CV-4-SPMAK

MAGNOLIA CAPITAL ADVISORS INC,

Plaintiff-Appellant,

versus

BEAR STEARNS & CO.,
BEAR STEARNS SECURITIES CORP.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(April 3, 2008)

Before BIRCH, CARNES and COX, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Magnolia Capital Advisors, Inc. ("Magnolia") appeals the order of the district court compelling arbitration as to its claims against defendants-appellees Bear Stearns & Co. and Bear Stearns Securities Corp. (collectively "Bear Stearns").[1] Magnolia argues that the court ordered arbitration and dismissed its claims without affording it the trial required by 9 U.S.C. § 4, even though Magnolia had unequivocally denied having agreed to arbitrate and produced evidence to substantiate that denial. We REVERSE and REMAND.

## I. BACKGROUND

Magnolia was a registered investment advisory firm whose primary activities involved recommending and directing securities transactions to its clients.[2] Don Reinhard, as Magnolia's principal, made the recommendations and transactions with clearing agent Bear Stearns through Paragon Financial Group, an introducing broker dealer. Bear Stearns was to provide daily status reports containing accurate and up-to-date information on Magnolia's client accounts. In its suit against Bear Stearns, Magnolia has alleged that Bear Stearns, for various reasons, failed to provide the daily reports, causing Magnolia clients substantial

[1]Magnolia also appeals the court's denial of its motion to vacate its judgment pursuant to Federal Rule of Civil Procedure 60(b) and also argues that the arbitration agreement is subject to a condition precedent before it might otherwise become obligatory to a signatory in the first place. Because we remand based on our finding that the district court was required to hold a bench trial in the first instance, we do not reach either of these issues.

[2]Magnolia was voluntarily dissolved in May 2004.

2

losses when margin calls were unexpectedly issued, forcing liquidation of those accounts. Accordingly, Magnolia brought claims for negligent misrepresentation, negligence, fraudulent misrepresentation, and tortious interference with existing business relationships.

Bear Stearns filed a motion to dismiss or compel arbitration of these claims, citing certain provisions contained in an "Options Information Form and Agreement" ("Options Form") as proof that Magnolia had agreed to resolve all disputes by arbitration. This agreement, for account number 174-00602-9-6, dated 5 April 2000, is styled as a letter addressed to a Bear Stearns client. There are name and address blanks prior to the salutation on the first page, and a space for a customer signature at the end of the second page. There are also signature blanks at the end of the first page for "R.B.," "BOM/ROP," and "Registered Options Principal." R1-4 at 10. The second page of the agreement contains an arbitration clause which explains the procedures for and consequences of arbitration, including waiver of the right to seek redress in court, the final and binding nature of arbitration decisions, and the limited right to appeal. The agreement to arbitrate is set out as follows:

> You agree, and by maintaining an account for you Bear Stearns
> Securities agrees, that controversies arising between you and Bear
> Stearns, its control persons, predecessors, subsidiaries and affiliates
> and all respective successors, assigns and employees, whether arising

prior to, or subsequent to the date hereof, shall be determined by arbitration.

Id.

Written in the name blank of the agreement in this case is "AmSouth Bank/Magnolia Capital Advisors." Id. This is followed by Magnolia's mailing address. Don Reinhard has signed at the end of the document in the space for a customer signature. Magnolia argues that it is not a party to the agreement and is only listed on the agreement in the capacity of an interested party for the purpose of receiving account statements, confirmation of trades, and other information important to management of the account. Magnolia also explains that Reinhard signed the agreement only in his capacity as the registered representative with Paragon. Paragon is not mentioned by name on the form, although R. William Lee, president of Paragon, did sign the form in three places at the bottom of the first page as "BOM/ROP," "Registered Options Principal," and "R.B." Id.

Reinhard has explained that he signed the Options Form when Paragon sent it to him "as registered representative of Paragon who would service the many customers and investors who would trade in the account."[3] R1-7-2 at 4. In other words, he was signing in his capacity as Paragon's registered representative in

---

[3]Reinhard also explained that Paragon sent him the form when he informed Paragon that some of the account's investors had decided "to engage in covered call option writing transactions." R1-7-2 at 4.

place of the account holders – the AmSouth investors. According to Reinhard, it was Paragon, not he, who put Magnolia's name along with that of AmSouth Bank, and Magnolia's address in the blanks at the top of the agreement. He suggests that Paragon did so to make clear that Magnolia should "be coded to receive confirms and statements." Id. He emphasizes that statements, confirmation of trades, and other account information needed to go to Magnolia as well as to AmSouth because Magnolia was the investment advisor for the AmSouth investors. Id. at 5. Attached to his affidavit were: (1) a November 1999 fax from Paragon to Bear Stearns requesting the opening of a new account, numbered "174-00602-9-6. RR 285: Magnolia Capital Advisors; Amsouth Bank." R1-7-2 at 7. According to Reinhard, his registered representative ID number with Paragon was 285. The second page of the fax contains "AmSouth Bank Delivery Instructions" for the account, listing various AmSouth Departments as well as several departments of the Bank of New York. R1-7-2 at 10. After the printed delivery instructions, Magnolia's name and address are hand-written in with the explanation: "Interested Party (to receive hard confirms and statements)." R1-7-2 at 8. An October 2002 fax from Paragon to Bear Stearns seeks to ensure, as to several accounts - including 174-00602-9-6, that "Magnolia Capital [is coded] as an interested party to receive confirms and statements." R1-7-2 at 9.

In response, Bear Stearns moved for leave to file a reply and then filed a reply brief to which it attached further documents.[4] These include: a July 2003 Paragon account statement for an account numbered 174-00602-285 which is addressed to Magnolia and AmSouth Bank at Magnolia's mailing address, R1-10-2 at 5, and a lengthy letter of understanding outlining Reinhard's role as a registered representative with Paragon. Reinhard's agreement with Paragon makes him an independent contractor rather than an agent of Paragon. The agreement explicitly states that Reinhard has no authority to bind Paragon, to enter into a contract, or act in any manner on its behalf. R1-10-3 at 2. The agreement also provides that Reinhard will "conduct all of [his] securities business as a registered General Securities Representative of [Paragon], and will place all brokerage orders for the account of others with [Paragon]." Id. at 3.

Referring only to the Options Form, the district court granted Bear Stearns's motion. Magnolia moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a) and 9 U.S.C. § 4. The district court denied the motion, ultimately finding that "the face of the agreement alone was sufficient to show that Magnolia

---

[4]The record does not indicate that the district court ever ruled on the motion for leave to file a reply. We can only assume the motion was granted since a reply brief and supporting documents were in fact filed.

bound itself to the terms of the agreement through the signature of its principal,

Don Reinhard." R1-34 at 2. The court explained:

> Reinhard's affidavit to the contrary does not change the fact that Reinhard signed the agreement's "Customer" signature blank, that the address listed on the form is that of Magnolia Capital Advisors, Inc., and that Reinhard's independent contractor status with Paragon Financial Group explicitly barred him from binding Paragon or entering into any type of agreement on Paragon's behalf.

Id. Magnolia timely appealed, case no. 07-10320-EE.[5]

## II. DISCUSSION

A. Making of the Agreement

Because it is well established that "parties cannot be forced to submit to arbitration if they have not agreed to do so," a district court, rather than a panel of arbitrators, must decide whether a challenged agreement to arbitrate is enforceable

---

[5]On 6 February 2007, Dirk Zeiters et al. filed a case against Magnolia in Leon County, Florida, in connection with the same transactions at issue in Magnolia's claims against Bear Stearns. Pursuant to that case, Magnolia noticed and took the deposition of Carrie Bell, formerly Vice President for Paragon. Bear Stearns had no notice of this deposition, and therefore, was not present. After taking this deposition, Magnolia filed a motion pursuant to Federal Rule of Civil Procedure 60(b), requesting that the district court's judgment in favor of Bear Stearns be vacated in light of newly discovered evidence regarding the agreement to arbitrate. Magnolia explained that Bell's testimony had not been available prior to the district court's ruling on the motion to compel arbitration because it was only available via subpoena, and discovery in Magnolia's case against Bear Stearns had been stayed pending the court's order on the arbitration issue. The district court denied Magnolia's motion on the ground that "the appeal process is far more appropriate to deal with errors of law or fact beyond mere clerical mistakes." R2-47 at 2 (internal quotation and citation omitted). Magnolia timely appealed this order as well. Case No. 07-11222-E. Because we reverse and remand based on the court's underlying order to compel arbitration, we do not reach the issues of the admissibility of this deposition testimony or whether it would satisfy the requirements of Rule 60.

against the parties in question. Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992). We have said that a party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial. Id. More specifically, we require a party resisting arbitration to "substantiate[] the denial of the contract with enough evidence to make the denial colorable." Wheat, First Secs., Inc. v. Green, 993 F.2d 814, 819 (11th Cir. 1993) (quotation and citation omitted). Once an agreement to arbitrate is thus put "in issue," the Federal Arbitration Act (FAA) requires the district court to "proceed summarily to the trial thereof" and if the objecting party has not requested a jury trial, "the court shall hear and determine such issue." 9 U.S.C. § 4.

Observing that a district court's order to arbitrate a contested agreement without benefit of trial is "in effect a summary disposition of the issue of whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate," the Third Circuit has applied the summary judgment standard in deciding what is sufficient evidence to require a trial on the issue of whether there was an agreement to arbitrate. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980). Adopting that reasoning, we agree that "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court

8

decide as a matter of law that the parties did or did not enter into such an agreement." Id. at 54. Further, as in the case of any other summary judgment, a district court considering the making of an agreement to arbitrate, "should give to the [party denying the agreement] the benefit of all reasonable doubts and inferences that may arise." Id.

Magnolia has met the first requirement for a § 4 trial by unequivocally denying that Reinhard signed the Options Form as an agent of Magnolia. Magnolia also produced the following evidence in connection with its first set of pleadings on the issue: (1) the affidavit of Reinhard in which he swears not to have signed the agreement as an agent of Magnolia and explains that he signed it as a registered representative of Paragon on behalf of the AmSouth investors who owned the account numbered 172-00602-9-6; (2) a fax from Paragon to Bear Stearns requesting the opening of that account by Paragon for the benefit of AmSouth investors, and listing Magnolia as an "interested party (to receive hard confirms and statements)," R1-7-2 at 8; and (3) a further fax from Paragon to Bear Stearns seeking to ensure that "Magnolia Capital" is listed as an "interested party to receive confirms and statements" on several accounts including the account at issue, id. at 9.

Although Bear Stearns filed a reply brief, none of the evidence accompanying that brief resolves the genuine issue of material fact raised by Magnolia's reponse. First, the Paragon account statement bearing Magnolia's name and address in addition to the name AmSouth, lists a different account number than that appearing on the Options Form. Second, the letter of understanding outlining Reinhard's relationship with Paragon is not inconsistent with his explanation regarding the capacity in which he signed the Options Form: although it states that he could not sign on behalf of Paragon, it directs that he conduct all securities business as a registered representative of Paragon on behalf of his investment advisee clients. Thus, it is not illogical for him to have signed the form, as requested by Paragon, as a registered representative of theirs, on behalf of the AmSouth investors – his clients.[6] Accordingly, we find that Magnolia submitted sufficient evidence to make its denial colorable.

---

[6]Bear Stearns also argues that Reinhard's signature, even in a representative capacity, binds him to the terms of the agreement. However, under New York law, which governs the agreement, that is only the case when the principal's name is not disclosed or the other contracting party has no actual knowledge of the identity of the principal. See Orient Mid-East Lines v. Albert E. Bowen, Inc., 458 F.2d 572, 575 (2d Cir. 1972); Nomura Secs. Int'l, Inc. v. E*Trade Secs., Inc., 280 F. Supp. 2d 184, 195 (S.D.N.Y. 2003). In this case, the principal's name is clearly written on the Options Form in the name blank. Further, the Delivery Instructions which accompanied Paragon's request that Bear Stearns open the account clearly establish that the account was for AmSouth Bank.

## III. CONCLUSION

Magnolia appeals the district court's order compelling arbitration as to its claims against Bear Stearns. Because, in 9 U.S.C. §4, the FAA provides for a trial when the making of an agreement to arbitrate is "in issue," and we find that Magnolia produced evidence sufficient to substantiate its unequivocal denial of having made any such agreement, we **REVERSE** the district court's order and **REMAND** this case for a trial as to the making of an agreement to arbitrate.