United States Court of Appeals
Fifth Circuit

**F I L E D**

July 27, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-10939

CALIFORNIA FINA GROUP, INC., d.b.a. FINACORP SECURITIES, INC.,

Plaintiff-Appellant,

versus

ROBERT L. HERRIN, JOSIE M. HERRIN, ERMA C. KUSIAN,
RICHARD J. WHITE, MAMIE M. WHITE, GARY L. CARPENTER,
RUSSELL J. FREY, BETTIE E. FREY, WALTER A. GRAMS,
NANCY BOSTON, EXECUTRIX OF THE ESTATE OF BESSIE GRAMS,
JOSE C. TAMEZ, ROSE A. MILLIGAN, and MARY P. ALBERT,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Texas

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge:

Defendants-Appellees Robert L. Herrin, *et al.* ("Appellees"), are a group of investors that purchased various investments from a former independent registered representative for Plaintiff-Appellant California Fina Group, Inc., d.b.a. Finacorp Securities, Inc. ("Fina Group"). Appellees filed a claim with the National Association of Securities Dealers, Inc. ("NASD"), seeking to arbitrate their dispute with Fina Group. Fina Group filed a declaratory action in district court seeking, *inter alia*, an order

stating they were not required to arbitrate because Appellees were not "customers" of Fina Group. Appellees filed a motion to compel arbitration. The district court ultimately granted Appellees' motion to compel arbitration and dismissed Fina Group's complaint. Fina Group appealed. Because we find Appellees fall within the term "customers" as used in Rule 10301(a) of the NASD Uniform Code of Arbitration and their dispute arose from Fina Group's business or Gibson's activities, such that Appellees could properly demand arbitration, we AFFIRM the decision of the district court.

## INTRODUCTION

Fina Group is a securities broker-dealer licensed and qualified to transact business pursuant to the rules and regulations of the NASD, the Securities and Exchange Commission ("SEC"), and other necessary state, local, and federal government agencies. On March 12, 1998, Fina Group and Darrell Todd Gibson ("Gibson") entered into an Independent Registered Representative Agreement (the "Agreement").

Pursuant to the Agreement, Fina Group agreed "to act as a broker/dealer for the purchase and sale of various securities" and Gibson was allowed to "place various buy and sell orders through [Fina Group] in accordance with the terms of this Agreement." The Agreement expressly stated that "the relationship between [Fina Group] and [Gibson] shall be that of a company and an independent contractor." The Agreement limited the type of securities Gibson

2

could sell to only those securities which Fina Group was authorized to sell.[1]

Appellees, who are elderly persons with little or no investment experience, allege they purchased the following investments from Gibson during the time frame that he was an independent registered representative for Fina Group:

(1) Financial Federated Title & Trust and American Benefits Services, Inc. ("FFTT/ABS") Viaticals;

(2) FFTT/ABS Viaticated Insurance Settlements;

(3) ETS Payphones, Inc.;

(4) Taormina Omne SRL Promissory Notes;

(5) Crown Meridian Bank, Ltd. Certificates of Deposit;

(6) Liberte Capital Group Viatical Settlements; and

(7) Chemical Trust Guaranteed Contract Agreements.[2]

Fina Group asserts it does not offer or sell these alleged investments.

On December 12, 2002, Appellees filed a Statement of Claim

---

[1] Addendum B to the Agreement indicates that the only outside business interest disclosed by Gibson to Fina Group was Gibson's sale of fixed annuities through his Group 1 license as a licensed Life & Disability Insurance Agent. The only other disclosures by Gibson to Fina Group were that he held a Series 6 license, which allows the representative to solicit and sell mutual funds, variable annuities, and variable life insurance contracts, and a Series 63 Blue Sky license, which is required before the representative can sell securities in any state.

[2] "A viatical settlement allows an individual with a life-threatening illness – such as AIDS, heart disease, cancer or Alzheimer's disease – to sell their life insurance policy for cash." *Frequently Asked Questions About Life Settlements*, *at* http://www.vspi.com/faq.htm.

with the NASD seeking to arbitrate a dispute between Fina Group and themselves based on the alleged actions and omissions of Gibson. Appellees alleged in the arbitration that Gibson sold fraudulent, unsuitable, and unregistered investments. Appellees alleged that Gibson recommended these investments while he worked for Fina Group, that Fina Group failed to supervise him, and that Fina Group was responsible for his actions. Appellees also alleged that they knew Gibson was a licensed broker for Fina Group and they made their investments based on his representations that he worked for his firm, they assumed his firm was supervising him, and they believed they were customers of his firm.

In response, Fina Group filed suit in the United States District Court for the Northern District of Texas on March 6, 2003, seeking: (1) a declaration that Fina Group did not have to arbitrate the claims alleged by Appellees in the NASD arbitration; and (2) an injunction to enjoin Appellees from pursuing the NASD arbitration with Fina Group. Fina Group's federal action was based on the affidavit of Eduardo J. Prado, Fina Group's President and CEO. Prado's affidavit established that Fina Group did not offer or sell the investments alleged to have been purchased by Appellees, that Fina Group did not receive any profit or benefit from Appellees' alleged investments, and that Fina Group did not have a contract with any of Appellees with respect to their alleged investments.

After answering Fina Group's federal action, Appellees filed

4

a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Appellees argued that Fina Group was required to arbitrate the claims brought by Appellees in the NASD arbitration, either: (1) based on NASD Rule 10301(a) or (2) as a purported third-party beneficiary of Gibson's Form U-4 application for registration with the NASD.

Rule 10301(a) of the NASD Uniform Code of Arbitration applies to all NASD members, including Fina Group, and provides:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series [NASD Administrative Provisions] between a **customer** and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon demand of the customer.

NASD Rule 10301(a) (emphasis added).

The NASD Uniform Code of Arbitration does not define "customer" or "associated person." The NASD Conduct Rules define "customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member." *Id.* 2270(b).[3] However, several other NASD rules define "customer" as any person other than a broker or dealer. *Id.* 0120(g); *see also id.* 6951(d); *id.* 4310(c)(6)(C) (relying on Rule 0120 definition); *id.* 4320(e)(4)(C) (same); *id.* 6800(e) (same).

---

[3]The NASD Rules are available online at http://cchwallstreet.com/NASD/NASD_Rules/.

5

The NASD By-Laws define "associated person" as "a natural person who is registered or has applied for registration under the Rules of the Association." By-Laws of the NASD, art. I(dd).[4]

Fina Group does not dispute that Gibson was an "associated person." Fina Group contends that Appellees cannot be "customers" of Fina Group (regardless of whether they were Gibson's own "customers") because Fina Group has never sold the investments at issue in this case. At a minimum, Fina Group requests a trial on the issues the district court had originally identified as needing resolution, *i.e.*, whether Appellees can be considered "customers" of Fina Group, and if so, whether the dispute between Appellees and Fina Group arose in connection with the business of Fina Group. Appellees allege that the term "customer" should be interpreted broadly, such that they can be considered "customers" for purposes of the Rule, and accordingly, that they are entitled to arbitrate their claims.

Additionally, Gibson was required to submit a Form U-4, Uniform Application for Securities Industry Registration or Transfer, to register with the NASD to sell securities in the State of Texas. Pursuant to his Form U-4, Gibson agreed:

> [T]o arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time

---

[4]The NASD By-Laws are available online at http://cchwallstreet.com/NASD/Organization/.

and that any arbitration award rendered against me may be entered as a judgement in any court of competent jurisdiction.

Form U-4.

Appellees claim that Fina Group accepted the benefit of Gibson's Form U-4 and therefore is bound by its requirement that Gibson arbitrate disputes with his customers. Appellees' argument related to Gibson's Form U-4 is based on a third-party beneficiary theory as well as on *respondeat superior* and agency theories. Fina Group asserts that: (1) the district court never accepted Appellees' argument concerning the Form U-4 requirement of arbitration; (2) the court was correct because Gibson was an independent contractor so Fina Group cannot be obligated by his Form U-4 agreement to arbitrate; and (3) there were no third-party beneficiary issues.

On May 7, 2003, the district court initially denied Appellees' motion to compel arbitration as to Fina Group. The district court found that there was "no written arbitration agreement between the parties." The district court also found that the case should be set for trial on an expedited schedule to determine whether arbitration was mandated under NASD Rule 10301, stating that the issue in determining whether arbitration was mandated would "seem to be whether [Appellees] were customers of [Fina Group] and whether the dispute between [Appellees] and [Fina Group] arises out of or in connection with the business of [Fina Group]." On July 1,

7

2003, the district court also denied Appellees' motion for reconsideration of the denial of their motion to compel arbitration.

Then, on August 7, 2003, the district court conducted a telephone hearing between the parties. During this conference, Appellees' counsel refused to concede they were customers only of Gibson, which prompted the judge to comment, "We're going to have a trial on arbitrability issues unless you're willing to concede that point." Nevertheless, on August 8, 2003, the district court issued an order granting Appellees' motion to compel arbitration and dismissed Fina Group's complaint. *See **Cal. Fina Group, Inc. v. Herrin***, 278 F. Supp. 2d 808, 810 (N.D. Tex. 2003). The district court held that Fina Group "is required to arbitrate disputes that fall within Rule 10301(a) when no independent agreement to arbitrate exists." ***Id.*** at 809. The district court also held that arbitration should be compelled based on factual findings that: (1) the dispute arose between Appellees as "customers" of Gibson and Gibson, an "associated person" of Fina Group; and (2) regardless of whether the dispute arose in connection with Fina Group's business, the dispute arose in connection with the activities of Gibson, the "associated person." ***Id.*** at 809-10.[5] Fina Group timely appealed.

---

[5] The district court did not rely on Gibson's Form U-4 when compelling Fina Group to arbitration. ***Cal. Fina Group, Inc. v. Herrin***, 278 F. Supp. 2d 808, 809-10 (N.D. Tex. 2003).

8

**DISCUSSION**

**<u>Whether the district court erred in granting Appellees' motion to compel arbitration with Fina Group.</u>**

This Court reviews *de novo* a district court's interpretation of an agreement to arbitrate and whether it binds the parties to arbitrate. ***Bridas S.A.P.I.C. v. Gov't of Turkmenistan***, 345 F.3d 347, 353 (5th Cir. 2003). The district court's factual findings are subject to review only for clear error. ***Id.***

In this case, there was no contract or independent agreement to arbitrate between Fina Group and any Appellee; therefore, the district court's order compelling arbitration was based on Fina Group's membership in the NASD and its obligation to abide by the NASD Uniform Code of Arbitration. Accordingly, arbitrability pursuant to the NASD is a threshold "question whether the parties have submitted a particular dispute to arbitration" and "is 'an issue for judicial determination.'" ***Howsam v. Dean Witter Reynolds, Inc.***, 537 U.S. 79, 83 (2002) (citations omitted); *see also* ***Will-Drill Res., Inc. v. Samson Res. Co.***, 352 F.3d 211, 214 (5th Cir. 2003) (explaining that arbitrability is an issue for the court, not the arbitrator, to decide); ***Investors Capital Corp. v. Brown***, 145 F. Supp. 2d 1302, 1305 (M.D. Fla. 2001) ("In the context of NASD arbitration, the issue of whether a would-be arbitration claimant is a 'customer' entitled to invoke NASD Rule 10301 is a threshold question going to the existence of an agreement to

9

arbitrate, and not to the agreement's scope.").[6]

The NASD Uniform Code of Arbitration requires certain claims be submitted to arbitration, including "[a]ny dispute, claim, or controversy . . . between a *customer* and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons . . . upon the demand of the customer." NASD Rule 10301(a) (emphasis added). Therefore, Appellees' argument that arbitration is required depends on their meeting the requirements of NASD Rule 10301(a): (1) whether Appellees are "customers"; and (2) whether the dispute arose "in connection with the business of such member or in connection with the activities of such associated persons."[7] The core issue in this case is whether Appellees are "customers" under

---

[6] Contrary to Appellees' assertion, the federal policy favoring arbitration does not apply in a situation like this when a court is determining whether an agreement to arbitrate exists. Rather, it applies when a court is determining whether the dispute in question falls within the scope of the arbitration agreement already found to exist. *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 (5th Cir. 2002); *see also* *BMA Fin. Servs., Inc. v. Guin*, 164 F. Supp. 2d 813, 818 (W.D. La. 2001) ("Thus, until this court determines that the Defendant-Investors were 'customers' and are therefore entitled to invoke arbitration pursuant to [Rule 10301(a)], this court may not give the Defendant-Investors the benefit of the federal policy favoring arbitration.").

[7] Appellees also claim arbitration is appropriate based on several theories relating to Gibson's Form U-4. These arguments were not addressed by the district court, and we also do not reach them here because we find arbitration appropriate pursuant to Rule 10301(a).

Rule 10301(a).

**1. <u>Whether Appellees are "customers" under Rule 10301(a).</u>**

The NASD Uniform Code of Arbitration does not define "customer." The NASD Conduct Rules define "customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member." *Id.* 2270(b). According to this particular definition, Fina Group argues Appellees cannot be considered "customers." Fina Group maintains the term "customer" should be interpreted narrowly when compelling arbitration pursuant to NASD Rule 10301(a) so that NASD members are required to arbitrate disputes only with their own customers, and not with every customer of an independent representative. According to Fina Group, this interpretation not only upholds the reasonable expectations of NASD members, but also comports with fundamental tenets for compelling arbitration. Considering Fina Group's reliance on the definition of "customer" in Rule 2270(b), we note that this definition appears to relate specifically only to paragraph (a) of Rule 2270, which explains what financial disclosures member firms are required to make to their "bona fide regular customer[s]." *Id.* 2270(b).

Rule 0120(g) of the NASD General Provisions, however, defines "customer" negatively and simply states that "[t]he term 'customer' shall not include a broker or dealer." *Id.* 0120(g). Thus, Appellees argue that they satisfy the "customer" requirement of

11

Rule 10301(a), regardless of whether they maintained any formal Fina Group accounts, because they were not brokers or dealers and, additionally, they were Gibson's, an "associated person's," "customers." Appellees maintain that Rule 0120(g) is the default definition that applies to Rule 10301(a) because the NASD has applied this broad definition in numerous other specific circumstances. *Id.* 6951(d) ("'Customer' shall mean a person other than a broker or dealer."); *id.* 4310(c)(6)(C) (expressly relying on Rule 0120 definition); *id.* 4320(e)(4)(C) (same); *id.* 6800(e) (same). According to Appellees, this broad definition is also consistent with the definition of "customer" commonly used by the SEC. *See* 17 C.F.R. § 240.11Ac1-1(a)(26) (2004) ("The term customer means any person that is not a registered broker-dealer."); 17 C.F.R. § 240.15c3-2 (2004) ("For the purpose of this section the term customer shall mean every person other than a broker or dealer."). Under the NASD Margin Requirements, Rule 2520(a)(3) states that "[t]he term 'customer' means any person for whom securities are purchased or sold or to whom securities are purchased or sold." NASD Rule 2520(a)(3); *see also* **MONY Sec. Corp. v. Bornstein**, 250 F. Supp. 2d 1352, 1356 (M.D. Fla. 2003) (citing this definition). Appellees argue they were "customers" under these definitions because they undisputedly were not brokers or dealers and they were sold securities. According to Appellees, the term "customer" in Rule 10301(a) is simply a shorthand method of

12

distinguishing retail investors' disputes from the industry disputes covered under NASD Rule 10201 rather than Rule 10301. *See, e.g.,* **Kidd v. Equitable Life Assurance Soc'y of the United States**, 32 F.3d 516, 519-20 (11th Cir. 1994) (discussing industry disputes under the prior version of Rule 10201).

Fina Group argues that compelling arbitration in this case does not further the purposes of the NASD arbitration forum because the Appellees' dispute does not arise from a relationship between them and their securities firm. According to Fina Group, it never anticipated having to arbitrate claims with individuals like Appellees, with whom it had no relationship. Further, Fina Group asserts Appellees can still bring their claims, but they are not entitled to arbitration. Appellees argue nothing in the Rule compels or even supports an interpretation that "customer" does not refer to the "associated person's" "customer." By arguing that an NASD-member firm must only arbitrate disputes "with its customers," Fina Group is rewriting the Rule by adding words to it.

This Court has never determined whether Rule 10301(a) requires a NASD-member firm to arbitrate with claimants where the claimants could only establish they were "customers" of the "associated person." However, when faced with a similar scenario, the Second Circuit in **John Hancock Life Insurance Co. v. Wilson**, 254 F.3d 48 (2d Cir. 2001), drew the exact conclusion advanced by Appellees here:

13

> John Hancock argues that the Investors must be customers of John Hancock and not merely of an associated person. In the district court's view, "the term 'customer' plainly refers to either the member['s] or the associated person['s] customer." We agree with the district court. There is nothing in the language of Rule 10301, or any other provision of the NASD Code, that compels us (or even suggests that we ought) to adopt John Hancock's narrow definition of the term "customer." In fact, the NASD Code defines "customer" broadly, excluding only "a broker or dealer." Rule 0120(g). The Investors are neither.

*Id.* at 59 (alterations in original and citations omitted). The district court below relied on *John Hancock* to conclude that the dispute between the parties was arbitrable, because it arose "between [Appellees] as customers and Gibson, an associated person of [Fina Group]." *Herrin*, 278 F. Supp. 2d at 809. The court also relied on *Vestax Securities Corp. v. McWood*, 280 F.3d 1078 (6th Cir. 2002), where the Sixth Circuit followed the reasoning of *John Hancock* to similarly reject the NASD-member firm Vestax's argument that "Rule 10301 requires that defendant-investors be direct customers of Vestax." *Id.* at 1082.

The instant situation is sufficiently analogous to that presented in *John Hancock*, where an "associated person" of John Hancock sold claimants fraudulent promissory notes, 254 F.3d at 51, and in *Vestax*, where two "associated persons" recommended securities to and made purchases on behalf of claimants, 280 F.3d

14

at 1080. We find the reasoning of our sister circuits persuasive.[8] Thus, we agree with the district court and find that as presently written, "customer" as used in Rule 10301(a) is plainly broad enough to include persons who purchased securities from a registered representative of an NASD-member firm, a.k.a. an "associated person," and who are not themselves brokers or dealers. As such, Appellees fall within the "customer" group intended to benefit from Rule 10301(a) and are eligible to demand arbitration of their dispute with Fina Group pursuant to such Rule.

### 2. **Whether Appellees' dispute is connected to the member's business or the activities of an "associated person."**

The second requirement of Rule 10301(a) is that the dispute must "aris[e] in connection with the business of such member or in connection with the activities of such associated persons." Here, the dispute involves allegations of an "associated person" of Fina Group recommending and selling fraudulent investments to Appellees and of Fina Group's negligent handling and supervision of its "associated person." As the district court correctly found, regardless of whether the dispute arises from Fina Group's business, it is clear such dispute relates to the activities of

---

[8]We do not find it significant that in *John Hancock Life Insurance Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001), there is no mention of whether John Hancock itself offered or sold the precise securities sold to the claimants by the "associated person," or that in *Vestax Securities Corp. v. McWood*, 280 F.3d 1078 (6th Cir. 2002), it is unclear whether Vestax itself offered or sold the securities which were purchased, through other firms, by the "associated persons" for the claimants.

15

Gibson, and there is no question that Gibson was an "associated person" of Fina Group.  Here, the second requirement of Rule 10301(a) has been fully met because there is a connection between the "customer's" dispute and the "associated person's" activities. Thus, Appellees can properly compel arbitration.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and arguments, and for the reasons set forth above, we conclude that the district court's decisions to grant Appellees' motion to compel arbitration and to dismiss Fina Group's complaint were correct.  Therefore, we AFFIRM.

**AFFIRMED.**