# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2015

Lyle W. Cayce
Clerk

No. 14-60247

————

JACK S. CHESTER, Individually, and on Behalf of all Similarly Situated
Individuals,

       Plaintiff - Appellee

v.

DIRECTV, L.L.C.,

       Defendant - Appellant

-------------------------------------------------------------

Consolidated with 14-60249

JACK S. CHESTER,

       Plaintiff - Appellee

 v.

DIRECTV, L.L.C.,

       Defendant - Appellant

————

Appeals from the United States District Court
for the Southern District of Mississippi
USDC 3:12-CV-710 & 3:13-CV-111

————

No. 14-60247 c/w 14-60249

Before JONES, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:*

In these consolidated appeals, DIRECTV, L.L.C. ("DIRECTV") appeals the denials of its motions to compel arbitration. We AFFIRM.

## FACTS AND PROCEEDINGS

In the summer of 2008, DIRECTV acquired Bruister & Associates ("Bruister") and hired most of the former employees of Bruister's Brookhaven, Mississippi office, including Jack S. Chester. DIRECTV maintains that it gave arbitration agreements to all new employees, who were required to sign them before beginning employment. Offer letters from DIRECTV and a company Frequently Asked Questions ("FAQ") page also provided that new employees from Bruister were obligated to sign arbitration agreements before beginning employment. Thus, DIRECTV argues that Chester must have signed an arbitration agreement, even though DIRECTV is now unable to locate it. Chester disputes that he signed an arbitration agreement. In an affidavit, he avers that he cannot remember having signed one, he would not have signed one unless he was threatened with termination, and he was not threatened with termination, so he must not have signed one.

In 2012, Chester was terminated. He brought two federal lawsuits against DIRECTV, which were assigned to different district judges. In Case Number 14-60247 (the "unpaid overtime case"), he sued for unpaid overtime; in Case Number 14-60249 (the "age-discrimination case"), he sued for age discrimination. DIRECTV filed motions to compel arbitration in each case. The district court in the unpaid overtime case held an evidentiary hearing on

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

whether an arbitration agreement existed. It ultimately concluded that DIRECTV had not proven that an agreement ever existed, so it denied the motion to compel arbitration. The district court in the age-discrimination case denied the motion to compel arbitration based on the parties' paper filings and the order in the unpaid overtime case.

## DISCUSSION

### I. Jurisdiction

We have appellate jurisdiction over the denials of DIRECTV's motions to compel arbitration. 9 U.S.C. § 16(a)(1)(D).

### II. Standard of Review

We typically review orders denying motions to compel arbitration *de novo*. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002). In particular, "[t]his Court reviews *de novo* a district court's interpretation of an agreement to arbitrate and whether it binds the parties to arbitrate." *Cal. Fina Grp., Inc. v. Herrin*, 379 F.3d 311, 315 (5th Cir. 2004). But "[t]he district court's factual findings are subject to review only for clear error." *Id.*

### III. Evidentiary Burdens

A district court must hold a trial on the existence of an arbitration agreement if a motion to compel arbitration is filed and "the making of the arbitration agreement . . . [is] in issue." 9 U.S.C. § 4. To put the making of the arbitration agreement "in issue," Chester was required to "unequivocal[ly] den[y]" that he agreed to arbitrate and produce "some evidence" supporting his position. *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980) (quoting *Almacenes Fernandez S. A. v. Golodetz*, 148 F.2d 625 (2d Cir. 1945)).

If Chester met this threshold burden, DIRECTV was then required to prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538,

540 (5th Cir. 2005) (per curiam).  The question of whether an agreement exists is governed by state law, *id.*, and, as the parties agree, Mississippi law applies here.[1]  We have held that, under Mississippi law, the party seeking to recover on a lost contract must prove "both (a) the former existence and the present unavailability of the missing document, and (b) the contents of the missing document."  *Id.* (internal quotation marks omitted).  Thus, as DIRECTV recognizes, it had to prove by a preponderance of the evidence: (1) that an agreement to arbitrate existed, (2) that it was lost, and (3) its contents.[2]

## IV. The Unpaid Overtime Case

The district court in the unpaid overtime case properly applied this burden-shifting framework.

### A. *Putting the Making of the Arbitration Agreement in Issue*

First, the making of the arbitration agreement was properly in issue because, contrary to DIRECTV's argument, Chester unequivocally denied making it and produced an affidavit providing as such.  DIRECTV argues that Chester did not unequivocally deny signing an arbitration agreement because he said he did not remember doing so.  But he did more than that.  Specifically, he introduced an affidavit[3] stating that "I do not remember signing any arbitration agreement, *and dispute that I signed an arbitration agreement* with Directv, LLC at anytime."  He also stated that, "[h]ad I been offered an arbitration agreement I would have attempted to continue my employment

---

[1] The lawsuits concern Chester's employment in Mississippi, and the arbitration agreement was allegedly executed in Mississippi.

[2] We note that DIRECTV seemingly fails to recognize that Chester's burden in this case is a threshold burden.  Instead, it seems to argue that the burden shifts to him once it carries its own burden.  This is incorrect; if it carries its burden, it wins its case, obviating the need to shift the burden to Chester.

[3] This so-called "affidavit" actually appears to be an unsworn declaration, but that is sufficient under federal law.  *See* 28 U.S.C. § 1746.

without signing it, and only would have signed it if the employer threatened to terminate me if it was not signed." Further, he stated, "[i]f I was threatened with termination if I did not sign an arbitration agreement I would remember it. Since I do not remember any such threat I am sure I did not sign an arbitration agreement." Chester therefore unequivocally denied signing an arbitration agreement. Chester also provided some evidence that he did not sign an arbitration agreement—his affidavit.[4]

Accordingly, we hold that Chester fulfilled his threshold burden and put the making of an arbitration agreement in issue. The district court was therefore correct to summarily proceed to a trial on this issue. 9 U.S.C. § 4.

*B. Evidentiary Hearing*

After determining that the making of the arbitration agreement was in issue, the district court held an evidentiary hearing. In effect, this hearing was essentially a bench trial confined to the issue of whether Chester signed an arbitration agreement.[5] The district court found that DIRECTV had not proven that Chester entered into an agreement to arbitrate. This finding was not clearly erroneous.

DIRECTV admitted that incoming Bruister employees signed one of two possible arbitration agreements (or sometimes both). One of DIRECTV's witnesses admitted that there is no way of knowing which arbitration

---

[4] In *Orr*, we held that a party's "self-serving affidavits" that contain "nothing more than hollow, bald assertions" of fraudulent inducement are insufficient to put the making of an arbitration agreement in issue. 294 F.3d at 710. But the present case differs from *Orr* in at least two ways. First, Chester provides more than "hollow, bald assertions"; he explains why he is convinced that he did not sign the arbitration agreement. Second, there is some corroborating evidence that Chester did not sign the agreement, given that DIRECTV has admitted that it cannot find the agreement. It is difficult to imagine what other evidence Chester could have presented to prove a negative (i.e., to prove that he did not sign the arbitration agreement).

[5] Chester may have been entitled to a jury trial on this issue if he had requested one, but he did not. *See* 9 U.S.C. § 4.

agreement Chester signed.    DIRECTV argues that this uncertainty is irrelevant because both agreements require the arbitration of overtime and age discrimination claims.    But the two agreements have substantially different terms in other respects.    For example, one of the agreements contains an opt-out clause, while the other does not.    Further, one agreement allows all of the discovery permitted by the forum state's rules of civil procedure, whereas the other agreement generally permits the deposition of only one witness. Mississippi law requires the proponent of a missing contract to prove its contents. *Banks*, 435 F.3d at 540.    DIRECTV has failed to do so.

Further, we are unconvinced that DIRECTV proved that Chester signed the arbitration agreement.    It argues that the fact that it lost *all* of Chester's employment documents, not just the arbitration agreement, supports its position that his file was simply misplaced.    But DIRECTV's argument is undermined by the fact that it cannot find approximately 26 of the 87 other arbitration agreements that were supposedly collected during the acquisition of Bruister's Brookhaven office.    Only the arbitration agreements were lost for these other incoming employees.    This fact supports an inference that DIRECTV did not actually collect arbitration agreements from many Bruister employees, including Chester.

Also, DIRECTV admits that it discovered that Chester's arbitration agreement was missing by 2010.    It admits that it did not ask Chester or other employees whose arbitration agreements were missing to sign new agreements.    This fact tends to undermine DIRECTV's claim that it was vigilant in ensuring that all employees signed arbitration agreements.    The district court did not clearly err by making this inference, even if there may be other plausible explanations for why DIRECTV chose not to replace the missing arbitration agreements.

6

DIRECTV points out that one of its employees testified that she and another employee collected all new hire packets during a Brookhaven meeting that Chester purportedly attended. She testified that they checked to make sure that all of these packets were signed and complete. The district court was permitted to disbelieve this testimony, given that many of the arbitration agreements were signed in the days following the meeting. Thus, even if her testimony is to be believed, the DIRECTV employees must not have accurately checked each of the arbitration agreements. This same employee testified that DIRECTV would never have performed the background check that it did perform if it had not received Chester's signed arbitration agreement. The district court was not required to credit this assertion. While DIRECTV supposedly had a policy of not beginning background checks without receiving signed arbitration agreements, policies are sometimes broken, either by mistake or by design. DIRECTV also argues that another employee (who did not testify) created a spreadsheet showing that almost all of the paperwork, including all of Chester's, was complete within a week of the Brookhaven meeting. But the district court was permitted to discount the accuracy of a spreadsheet created by a non-testifying employee.

DIRECTV also relies upon the fact that Chester essentially admits that he signed an offer letter that provided that he was required to sign an arbitration agreement. It also points out that new employees coming from Bruister were directed to a FAQ page stating that they were obligated to sign arbitration agreements. While this evidence could support an inference that Chester signed an arbitration agreement, it does not require this inference.[6]

---

[6] We note that DIRECTV does not argue that the signed offer letter itself constitutes an agreement to arbitrate.

Considering the entire record, it is clear that, somewhere along the way, DIRECTV's purported practice of collecting and filing arbitration agreements for all new employees broke down during the acquisition of Bruister's Brookhaven office.  DIRECTV argues that the practice went awry during filing rather than collection.  But, given the record before us, the district court was entitled to find that the process broke down during collection, particularly given that the district court specifically found that two of DIRECTV's witnesses were not credible.

Thus, even though some evidence might cut the other way, the district court did not clearly err by finding that DIRECTV failed to prove by a preponderance of the evidence that Chester signed an arbitration agreement. Accordingly, it did not err in denying DIRECTV's motion to compel arbitration.

**V. The Age-Discrimination Case**

As in unpaid overtime case, Chester met his burden of unequivocally denying that he signed an arbitration agreement, and he produced some evidence of this denial by submitting an affidavit.  *See* Section IV.A, *supra.* Thus, Chester met his initial burden of putting the making of the arbitration agreement in issue.

Unless the unpaid overtime case's order denying the motion to compel arbitration deserved preclusive effect, the court in the age-discrimination case should have proceeded to a bench trial on the issue of whether an arbitration agreement existed.[7]  9 U.S.C. § 4.  Rather than proceeding to a bench trial, the district court instead denied the motion to compel arbitration outright.  But, on appeal, DIRECTV does not argue that we should remand for an evidentiary hearing or bench trial.  Instead, it requests only that we "reverse and [ ] render

---

[7] We need not and do not decide whether the denial of the motion to compel arbitration in the unpaid overtime case was entitled to preclusive effect.

with instructions that Chester must arbitrate all claims against the company." "Obviously, a party is bound by, or limited to, the relief it seeks on appeal." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1998). Thus, DIRECTV has waived any argument that we should remand based on the district court's failure to hold a bench trial.

As we have discussed, Chester met his threshold burden of putting the making of an arbitration agreement in issue, so the district court could not have granted DIRECTV's motion to compel arbitration based on the paper pleadings. For this same reason, we cannot provide DIRECTV's requested relief of rendering judgment in its favor.

## CONCLUSION

For the foregoing reasons, we AFFIRM.