# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 1, 2021

Lyle W. Cayce
Clerk

No. 20-11000

Edward Gallagher,

*Plaintiff—Appellee*,

*versus*

Colby Vokey; Colby Vokey PC, *also known as* Law Firm of Colby C Vokey PC, *also known as* Colby C Vokey PC,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2196

---

Before Clement, Haynes, and Wilson, *Circuit Judges*.

Per Curiam:*

Colby Vokey represented Edward Gallagher in criminal proceedings brought by the United States Navy. Their relationship deteriorated, and Gallagher terminated Vokey's representation. Shortly thereafter, Vokey demanded payment for his services and, when Gallagher refused to pay,

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-11000

invoked the arbitration clause in the Engagement Letter that Gallagher had purportedly signed. Vokey sued to compel arbitration; Gallagher sued separately for a declaratory judgment that he could not be compelled to arbitrate and that he did not owe Vokey any fees. The district court consolidated the cases and denied Vokey's motion to compel arbitration. This interlocutory appeal followed. We now REVERSE and REMAND.

## I. Facts and Proceedings

This case arises out of Vokey's representation of Gallagher in a high-profile war crimes case. Gallagher, a Navy SEAL who has since retired, learned in early 2018 that he was being investigated for serious violations of the law of armed conflict arising from his 2017 combat deployment to Iraq. Vokey and his firm, Colby Vokey PC, were known in the SEAL community for providing counsel through a non-profit, United American Patriots ("UAP"). Gallagher contacted Vokey, who helped him apply for funding through UAP's "Warrior Fund" in April 2018.

In September 2018, Gallagher was taken into custody pending trial. The parties do not dispute that Vokey met with Gallagher and his wife on October 10, 2018. Vokey met with Gallagher again on October 13, 2018, this time without Gallagher's wife present, but with John Keagan Riley, an associate of Vokey's, accompanying him.

Vokey alleges that he presented Gallagher with a contract for representation (the "Engagement Letter") containing the arbitration agreement at issue, that he explained the contract to Gallagher, and that Gallagher signed it. Gallagher, however, claims that he has no recollection of having seen or signed the document. He supports this claim by pointing to the date of his signature on the document—October 11, 2018—on which date, the parties do not dispute, Gallagher had no visitors. Vokey contends that the October 11 date is merely a typographical error.

2

No. 20-11000

The relationship between Gallagher and Vokey eventually soured, and Gallagher terminated Vokey's representation. Vokey presented Gallagher with bills for his services up to that point, which Gallagher contends should be UAP's responsibility. Vokey invoked the arbitration agreement, but Gallagher, through new counsel, refused to participate in arbitration.

Vokey sued in Texas State court to compel arbitration. Gallagher removed the case to the United States District Court for the Northern District of Texas and, that same day, filed a separate suit for declaratory relief to include, *inter alia*, declarations that the Engagement Letter was invalid, that Gallagher was not obligated to arbitrate, and that Gallagher did not owe Vokey any fees.

The cases were consolidated, and Vokey moved to compel arbitration.[1] The district court, pointing to the date discrepancy and Gallagher's claim that he does not remember signing the document, held that there was a genuine dispute over the validity of the Engagement Letter, and denied the motion to stay litigation and compel arbitration. Vokey appealed.

## II. Standard of Review

We review "de novo a district court's ruling on a motion to compel arbitration." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). "Arbitration is strictly 'a matter of consent,' and thus 'is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) (first quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); then quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Thus, a court must

---

[1] Although this appeal concerns only Vokey and his firm, Vokey's co-counsel Phillip Stackhouse and UAP were also named as defendants before the district court.

first "determine whether the parties agreed to arbitrate the dispute," before considering "whether any federal statute or policy renders the claims nonarbitrable." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotation marks omitted). "When considering the first question, there are two considerations: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.* (quoting *Am. Heritage Life Ins. Co. v Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (Clement, J.)). The first question, whether an agreement exists, is a question for the court, to be answered by applying "ordinary contract principles." *Id.* (internal quotation marks omitted).

"[C]ourts generally . . . should apply ordinary state-law principles that govern the formation of contracts" when deciding whether an agreement to arbitrate exists. *First Options of Chi., Inc.*, 514 U.S. at 944. Because the parties agree that this dispute arises under Texas law, we will be guided by Texas contract law in determining whether the parties had an agreement to arbitrate.

## III. Discussion

The quantum of evidence required to prove or disprove the existence of an agreement to arbitrate is not entirely clear in this Circuit. *See Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("Our caselaw has not established the precise showing a party must make."); *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019) ("[T]he [Fifth] Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration" where the formation of an agreement is disputed (internal quotation omitted)). We are guided by the text of the Federal Arbitration Act ("FAA"), which directs the court to:

No. 20-11000

> hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. The parties do not dispute that Gallagher refused to participate in arbitration; they dispute only whether Gallagher agreed to arbitrate in the first place. The question for us, therefore, is whether the making of an agreement to arbitrate is "in issue."

Several of our sister Circuits apply the summary judgment standard of Rule 56—a party resisting arbitration must produce enough evidence to create a genuine dispute of material fact as to whether the parties agreed to arbitrate. *See, e.g.*, *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3d Cir. 2009); *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008); *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785–86 (11th Cir. 2008) (per curiam); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

This Circuit has not articulated precisely what quantum of evidence is necessary to prove or disprove the existence of an agreement to arbitrate, but we have explained that "[t]he party resisting arbitration bears 'the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act.'" *Dillard*, 961 F.2d at 1154 (quoting *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987)). Further, "the party must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true . . . [and] he must produce at least some evidence to substantiate his factual allegations." *Id.* "To put the making of the arbitration agreement 'in issue,'" a party is "required to

'unequivocal[ly] den[y]' that he agreed to arbitrate and produce 'some evidence' supporting his position." *Chester v. DirecTV, LLC*, 607 F. App'x 362, 363–64 (5th Cir. 2015) (per curiam) (alterations in original) (quoting *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980)). Although this "some evidence" standard may appear similar to the summary judgment standard predominant in our sister Circuits, we need not—and do not—decide whether the 9 U.S.C. § 4 standard in this Circuit is congruent with the summary judgment evidentiary standard of Rule 56. It is sufficient that, where competent evidence showing the formation of an agreement to arbitrate has been presented, § 4 requires a party resisting arbitration to produce *some* contrary evidence to put the matter "in issue."

Here, Gallagher has presented no such evidence. Although Gallagher insists that the only evidence supporting the formation of a contract is Vokey's "self-serving" declaration, this argument is neither conclusive nor accurate. It is inconclusive because we have held that an uncontroverted affidavit, even when supplied by a party or a party's employee, can establish the existence of an agreement to arbitrate. *See, e.g.*, *Banks v. Mitsubishi Motors Credit of Am.*, 435 F.3d 538, 540–41 (5th Cir. 2005). It is inaccurate because, in addition to two sworn declarations from Vokey himself, Vokey also provided a sworn declaration from a disinterested third party[2] and *a copy of a signed contract*.

Since we look to Texas contract law to determine whether the parties had an agreement to arbitrate, the signed contract is particularly helpful for

---

[2] Gallagher seeks to portray Riley's declaration as an additional, self-interested party declaration, calling it "a declaration from [Vokey's] associate." But the declaration makes clear that Riley is no longer affiliated with Vokey—since the events at issue, he joined the Marine Corps and was a First Lieutenant on active duty when he made the declaration. He is neither a party to this case nor affiliated with Vokey's firm.

our analysis. "Texas courts have consistently held that 'a party's signature on a written contract is strong evidence that the party unconditionally assented to its terms.'" *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 666 (Tex. App.—Dallas 2012, pet. denied) (quoting *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 769 (Tex. App.—El Paso 2009, no pet.)).[3] We derive further guidance on Texas law from *Wright v. Hernandez*, in which a Texas appellate court held that a signature—the authenticity of which had not been challenged—combined with an affidavit attesting to the authenticity of the signature based on personal knowledge was sufficient to prove the existence of an agreement to arbitrate. 469 S.W.3d 744, 752–53 (Tex. App.—El Paso 2015, no pet.). The *Wright* Court further noted "that a party is not required to produce evidence to establish the genuine nature of a signature on an arbitration agreement in the absence of a sworn challenge to the signature." *Id.* at 752. The signed Engagement Letter, combined with Vokey's and Riley's sworn declarations attesting to having personally witnessed Gallagher sign the document, are strong evidence that the contract is genuine.

In response, Gallagher has produced no evidence whatsoever. It is axiomatic that "pleadings are not summary judgment evidence." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is a mere pleading sufficient to resist arbitration. Gallagher points us to his complaint, wherein he alleges that he has no recollection of having signed the Engagement Letter.[4] This is not competent evidence that he did not sign the Letter; even

---

[3] Gallagher does not plainly deny that he signed or executed the contract. *See* Tex. R. Civ. P. 93. "In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved." *Id.*

[4] Throughout his brief, Gallagher also implies that he had a preexisting contract with Vokey that would have been contradicted or supplanted by the Engagement Letter, hinting that this duplication is further evidence that the Engagement Letter is not genuine. However, the prior contract to which he points was between Gallagher and UAP, and it outlined the requirements for Gallagher to request Warrior Fund support from UAP. The

if it were, there is an important conceptual difference between "I don't remember" and "I didn't sign it," and the latter—backed by evidence—is what would be required to overcome Vokey's proffer of a signed contract. *Cf. Batiste v. Island Recs., Inc.*, 179 F.3d 217, 223 (5th Cir. 1999) (stating that a party's "inability to remember signing [the contract] is not sufficient to raise a material issue as to the validity of the agreements" (internal citation omitted)).

The district court was also persuaded by the date discrepancy (the contract was signed on the 13th, but Gallagher's signature is dated the 11th). This is entirely explained by both Riley and Vokey in their declarations as a typographical error; Gallagher has produced no evidence to support an alternative explanation. In the absence of any evidence to the contrary, there is no reason to believe that this explanation is inaccurate or that the contract is inauthentic.

This court's holding in *Chester v. DirecTV, L.L.C.* is instructive. 607 F. App'x 362. The *Chester* Court held that an employer had failed to prove the existence of an arbitration agreement where the employee produced an affidavit explaining not only that he did not remember signing such an agreement, but that he would not have done so absent a threat of termination and that he would certainly have remembered being threatened with termination. He concluded, unequivocally, that he was therefore "sure [he] did not sign an arbitration agreement." *Id.* at 365. By contrast, Gallagher has not declared or even alleged his certainty that he did not sign an agreement

---

only contract for legal services between Vokey and Gallagher in the record is the Engagement Letter. Additionally, contrary to Gallagher's suggestion that the UAP contract stated that UAP would pay Vokey's fees, it clearly recites that the UAP has the discretion to decide whether and how much to contribute. Nowhere does it state that Vokey's fees will be limited to what the UAP pays.

(he did not declare *anything*), he did not offer any supporting evidence to substantiate the allegation that not remembering was the same as not signing (for example, he did not claim that he would have refused to sign an arbitration agreement unless Vokey threatened to quit representing him and that he would have remembered such a threat), and, unlike the employer in *Chester*, Vokey *was* able to produce a signed document. The district court therefore erred when it "[took] no position on the validity of the engagement document." *Gallagher v. Vokey*, No. 3:19-cv-2196, 2020 WL 5211065 at *3 (N.D. Tex. Sept. 1, 2020). The uncontroverted evidence proved that the document was genuine and had been signed by Gallagher, so the court erred in failing to credit it as a genuine agreement.

We turn, briefly, to the remaining portions of the arbitrability test and Gallagher's arguments. Neither party seriously contests that this billing dispute falls within the terms of the agreement—nor could they. The extremely broad agreement includes "any matter related to this Agreement or the Firm's professional relationship with the Client." Because (1) there is a valid agreement to arbitrate and (2) the dispute falls within that agreement, the parties agreed to arbitrate. *See Will-Drill Resources, Inc.*, 352 F.3d at 214. A court should next consider whether any federal statute or policy would render the claim nonarbitrable, but neither party points to any conflicting statute or policy, so there are no remaining barriers to arbitration. *Id.*

Gallagher argues (in pleadings) that, if he signed the contract, he was fraudulently induced into doing so. He does not, however, "state with particularly the circumstances constituting fraud or mistake," as required by FED. R. CIV. P. 9(b). He does not identify any information that Vokey should have provided or that was inaccurate. The contract, including the arbitration clause, is very clear in its terms. Under Texas contract law, courts "have always presumed that a party who signs a contract knows its contents." *In re Bank of America, N.A.*, 278 S.W.3d 342, 344 (Tex. 2009)

(internal quotation marks omitted); *see also ReadyOne Indus., Inc. v. Flores*, 460 S.W.3d 656, 668 (Tex. App.—El Paso 2014, pet. denied) ("[A] person who signs a contract is presumed to have read and understood the contract unless he was prevented from doing so by trick or artifice.").

Gallagher's allegations amount to a concern that a defendant, relying on his lawyer, may incautiously sign anything placed in front of him. But we need not take any position on the firmness with which we would anticipate Chief Petty Officer Gallagher to withstand undue pressure from his lawyer, since Gallagher has not alleged that Vokey pressured him in any meaningful manner. Without any allegation as to any specific misrepresentation Vokey made to induce Gallagher to sign the contract, any hint as to what information Gallagher did not receive that he should have, or any evidence to contradict the sworn declarations establishing that the Engagement Letter was fully explained to Gallagher before he signed it, the arbitration clause is enforceable.[5]

## IV. Conclusion

Vokey provided adequate evidence to establish that he and Gallagher had entered into an enforceable arbitration agreement and that their billing dispute fell within the scope of that agreement. Gallagher produced no evidence to contradict the enforceability of the agreement or put the formation of an agreement "in issue." The district court erred in denying Vokey's motion to compel arbitration, so we REVERSE and REMAND.

---

[5] To the extent there remain arguments about the validity of the contract, they are reserved to the arbitrator, upon whom we place no limitations as to what issues they may or may not consider.