# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2022

Lyle W. Cayce
Clerk

No. 21-10428

Radley Soni,

*Plaintiff—Appellant*,

*versus*

Solera Holdings, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2925

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.
Per Curiam:*

Radley Soni challenges the district court's: granting the motion by Solera Holdings, L.L.C. (Solera), to dismiss and compel arbitration, including denying his hearsay objection to Solera's declaration in support of that motion. AFFIRMED.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10428

I.

In 2018, Soni accepted an offer from Solera to work as a sales manager for one of its subsidiaries (collectively Solera). Soni's action in 2020 for asserted wrongful discharge that year presents claims under: the Age Discrimination in Employment Act of 1967; 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964; and the Texas Labor Code. He also demanded a jury trial.

Solera moved to dismiss and compel arbitration under the arbitration agreement (agreement) Soni was required to sign during his new-employee onboarding; it provides: "all disputes and claims between [Soni and Solera] shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator".

Solera attached to its motion the sworn declaration of a human-resources (HR) specialist (Solera declaration), which states the specialist, having been employed by Solera since 2016, is knowledgeable of Solera's employee-onboarding process. The Solera declaration also states: the onboarding process requires all new employees to sign an arbitration agreement in Solera's online platform (platform) *before beginning work*; Soni created an account for the platform; after the employment offer was made to Soni, Solera emailed him instructions to sign the agreement in the platform; and he electronically did so on 1 March 2018 at 1:00 p.m. by checking a box in the agreement.

The Solera declaration's two exhibits—the agreement electronically signed by Soni and a platform record showing Soni "completed" the agreement—both corroborate Soni signed on that day and time by checking in red a box labeled "Signature" with an instruction below that box stating checking it was "equivalent to a handwritten signature". And, in the agreement, Soni's name, and the date and time of his electronic signature,

appear between the box and the instruction.  The agreement thrice references signatures:  "Except as provided below, Employee and the undersigned employer . . . agree all disputes and claims between them shall be determined exclusively by final and binding arbitration . . ."; "By signing this Agreement, Employee acknowledges . . ."; and providing two signature boxes to check— one for Solera and one for Soni.

As discussed, Soni's electronic signature appears on the agreement attached to the Solera declaration.  But, Solera's representative's electronic signature does not appear (its box is not checked).

Soni's response contended:  the Solera declaration constitutes hearsay, not falling within Federal Rule of Evidence 803(6)(E)'s exception for records of regularly conducted activity because it is not trustworthy; and the agreement is unenforceable because it was not validly executed.  Soni's sworn declaration in support of his response states, *inter alia*:  he "do[es] not recall reading or signing any arbitration agreement"; he "believe[s he] would have saved a copy if [he] had signed such an agreement"; he did not interact with the HR specialist who provided Solera's declaration; and inconsistencies exist between his personal records and Solera's, including that, contrary to Solera's email and platform records, the agreement was never provided to him, either before or after Solera alleges he signed it electronically.

Attached to Soni's declaration is his email, dated 1 March 2018 at 3:44 p.m. to a Solera employee, which states:  "I have completed all tasks through the web portal"—the platform.  (That time of day is two hours and 44 minutes after the time provided with Soni's electronic signature to the agreement.)

No. 21-10428

In its comprehensive and well-reasoned order/opinion, the court: overruled Soni's objection to the Solera declaration and, therefore, considered it; and granted Solera's motion to dismiss and compel arbitration.

## II.

Soni contends the court erred by: considering the Solera declaration because it constitutes hearsay; and compelling arbitration because the agreement was not validly executed. Essentially for the reasons stated by the district court, Soni's challenges fail.

## A.

Soni's hearsay objection's being denied is reviewed for abuse of discretion. *E.g.*, *Abner v. Kansas City S. R. Co.*, 513 F.3d 154, 168 (5th Cir. 2008). One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity. FED. R. EVID. 802, 803(6).

Rule 803(6) predicates admissibility on, *inter alia*, "the opponent['s] . . . not show[ing] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness". In district court, Soni challenged only the Solera declaration's trustworthiness; any other challenge under the rule is, therefore, waived. *E.g.*, *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

The parties dispute whether Solera was required to establish Rule 803(6)'s exception applies. In any event, Soni's only preserved challenge (trustworthiness) fails. A finding that an out-of-court statement is trustworthy is upheld unless clearly erroneous. *E.g.*, *United States v. Briscoe*, 742 F.2d 842, 846–47 (5th Cir. 1984). Soni first contends minor inconsistencies between the Solera declaration and exhibits attached to his declaration render it untrustworthy. "[G]reat latitude", of course, is given

the district court in its trustworthiness finding. *E.g.*, *Miss. River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1319 (5th Cir. Unit A Oct. 1981). "Some inconsistencies" between the evidence do not require a finding of untrustworthiness. *Westfall v. Luna*, 903 F.3d 534, 543 n.3 (5th Cir. 2018). Considering the inconsistencies Soni raises, the court's finding regarding the Solera declaration's trustworthiness was not clearly erroneous, as it is "plausible in [the] light of the record . . . as a whole". *Gonzales v. Mathis Indep. Sch. Dist.*, 978 F.3d 291, 297 (5th Cir. 2020) (citation omitted). *Inter alia*, his declaration exhibit (an email sent after 1:00 p.m. on 1 March, the date of his electronic signature) states he signed all required documents in the platform.

Soni next contends the Solera declaration is untrustworthy because the HR specialist who provided it lacked personal knowledge of Soni's new-employee onboarding process. To the contrary, the witness laying the foundation for a record of regularly-conducted activity need not "be the author of the record or be able to personally attest to its accuracy". *United States Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 415 (5th Cir. 2010) (citation omitted).

### B.

Soni presents two substantive challenges to the agreement: whether its formation is sufficiently in issue to warrant trial; and, if not, whether it is enforceable. The agreement falls within the scope of the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1–2. "Where the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the state governing the agreement." *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005). The agreement provides, and the parties do not dispute, that Texas law governs in ascertaining its validity.

1.

An order compelling arbitration is reviewed *de novo*, employing the same standards as the district court. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002). Factual findings related to the agreement's enforceability are reviewed for clear error. *Cal. Fina Grp., Inc. v. Herrin*, 379 F.3d 311, 315 (5th Cir. 2004).

Whether a party may be *compelled to arbitrate* is a two-step inquiry: did "the [parties] . . . agree[] to arbitrate"; and does "any federal statute or policy render[] the claims nonarbitrable". *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citation omitted). Soni challenges only the first prong.

Similarly, whether the parties *agreed to arbitrate* is a two-step inquiry: "is there a valid agreement to arbitrate"; and "does the dispute in question fall within [its] scope". *Id.* Soni, again challenging only the first prong, contends a summary-judgment standard, as used by six circuits, should be employed to determine whether the evidence shows the parties agreed to arbitrate. *E.g.*, *Century Indem. Co. v. Certain Underwriters at Lloyd's*, *London*, 584 F.3d 513, 528 (3d Cir. 2009); *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785–86 (11th Cir. 2008).

Our court "has not articulated precisely what quantum of evidence is necessary to prove or disprove the existence of an agreement to arbitrate". *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (citing *Dillard v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)). To answer that question, *Gallagher* points to the test under the FAA, 9 U.S.C. § 4 (permitting trial on arbitration agreement's formation if "in issue"), employed in *Dillard*. 860 F. App'x at 357. The test requires the party opposing enforcement to "make at least *some showing* that[,] under prevailing law, he would be relieved of his contractual obligation to arbitrate

if his allegations proved to be true". *Dillard*, 961 F.2d at 1154 (emphasis added). The "some showing" standard requires: unequivocally denying entering the contract, *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980); and producing evidence sufficient to substantiate that allegation, *Dillard*, 961 F.2d at 1154.

As in *Gallagher*, "we need not—and do not—decide whether the 9 U.S.C. § 4 standard in this Circuit is congruent with the summary judgment evidentiary standard of [Federal Rule of Civil Procedure] 56". 860 F. App'x at 357. That well-known summary-judgment evidentiary standard includes whether there are genuine disputes of material fact. Fed. R. Civ. P. 56(a). (Soni's contention that this court's standard has been overruled, or that state law should inform who bears the burden, is abandoned for failure to raise it in his opening brief. "Generally, issues not raised in . . . appellant's opening brief are considered abandoned". *Akuna Matata Invs., Ltd. v. Tex. Nom Ltd. P'ship*, 814 F.3d 277, 282 n.6 (5th Cir. 2016) (citing *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1539 n.14 (5th Cir. 1984) (holding issue not raised in opening brief abandoned because "entirely separate" from other challenges and "not raised in response to any novel argument in [a]ppellee's brief")).)

2.

Soni contends the court should have proceeded to trial on the agreement's formation. In the alternative, he contends the agreement is unenforceable because: neither he nor Solera signed it; and the agreement does not comply with Texas Business & Commerce Code § 322.008(a) (Uniform Electronic Transactions Act).

a.

As discussed *supra*, trial on the agreement's formation is warranted only if "in issue". 9 U.S.C. § 4. Soni fails to meet the above-discussed,

requisite "some showing" standard. The mandated unequivocal denial requires more than "self-serving affidavits" containing "hollow, bald assertions". *Orr*, 294 F.3d at 710. Soni's statements in his declaration are: "not recalling" signing the agreement; and "believing" he would have saved a copy of that allegedly electronically signed agreement had he signed it. These statements fall far short of the requisite unequivocal denial, considering, *inter alia*, the Solera declaration's having as an exhibit the agreement electronically signed by Soni. *Cf. Chester v. DirectTV, L.L.C.*, 607 F. App'x 362, 363–64 & n.4 (5th Cir. 2015) (concluding party unequivocally denied entering agreement by making similar statements when party seeking enforcement did not provide signed agreement).

Even if Soni had unequivocally denied signing the agreement, his presented evidence does not sufficiently support his allegations. *See Dillard*, 961 F.2d at 1154. For example, he fails to explain how the electronic signature on the agreement is not his. Moreover, as reflected *supra*, his own evidence undermines his allegation that he does not recall signing the agreement.

b.

For his alternative contentions that, if trial is not warranted, the agreement is nevertheless unenforceable, Soni first relies on Solera's not signing it. The FAA does not expressly impose a signature requirement. 9 U.S.C. § 2. And, under Texas law, "the absence of a party's signature does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of a contract". *Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App. 2015). But, if the terms of the contract *clearly* require a signature, failure to sign renders the agreement unenforceable. *Id.* at 757–58.

If signing is not required and "a party's signature is absent, other evidence must be presented to prove [that] party unconditionally and

mutually assented to the terms of the contract". *Lujan v. Alorica*, 445 S.W.3d 443, 448–49 (Tex. App. 2014).  Texas courts consider "the employer's act of drafting the arbitration agreement, its actions in maintaining the agreement as a business record, and its actions in moving to enforce the agreement when the employee filed suit against it".  *SK Plymouth LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App. 2020) (citation omitted).

None of the agreement's above-described references to a signature clearly establish Solera's signature was a condition precedent.  The signature box and instruction that checking it "is equivalent to a handwritten signature" in the agreement, on their own, are not sufficient to establish a condition precedent.  *Tricon Energy Ltd. v. Vinmar Intern., Ltd.*, 718 F.3d 448, 454 (5th Cir. 2013) (applying Texas law and noting, in concluding signatures constituted condition precedent, that "the blank signature lines hardly stood alone").  Moreover, the use of "undersigned employer", does not clearly establish the agreement would be unenforceable absent Solera's signature.

Given Solera's lack of signature, we must turn to whether it has demonstrated it "unconditionally and mutually assented" to the agreement. *Lujan*, 445 S.W.3d at 448–49.  It has.  For example, Soni was allowed to work for Solera; and its policy was that "every new applicant for employment . . . sign an arbitration agreement as a condition of employment".  It also drafted the agreement, maintained it as a business record, and promptly sought to enforce it after Soni filed this action.

Soni next contends that the agreement's execution failed to comply with § 322.008(a) of the Texas Uniform Electronic Transactions Act.  Soni has not demonstrated how that Act applies.  By its text, it applies only if "a law requires" one person to "deliver information in writing to another person".  *Id.*  The FAA, however, imposes no delivery requirement.  *E.g.*, 9 U.S.C. §§ 2–3.

No. 21-10428

## III.

For the foregoing reasons, the judgment is AFFIRMED.